### Missouri, Kansas & Texas Railway Company v. Fred Traub.

Delivered May 21, 1898.

**Railway Company—Negligence—Steam Escaping.**

Where an engineer in charge of an engine near a public highway negligently allows steam to escape with a sudden and violent noise and in a manner calculated to frighten passing teams, one whose team is so frightened may recover of the railway company the resulting damages, whether or not the engineer or any employe saw the team.

APPEAL from Hunt. Tried below before Hon. HOWARD TEMPLETON.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*B. Q. Evans* and *Yoakum & Vaughan,* for appellee.

RAINEY, ASSOCIATE JUSTICE.—Suit by appellee to recover damages for personal injuries alleged to have been caused by the negligence of appellant by permitting steam to escape from the engine of appellant, which frightened appellee's team which he was driving, causing the team to run away, and inflicting injuries upon appellee.

Appellant pleaded general denial, contributory negligence, and specially, that appellee's team was not gentle, but was wild and unruly, and was frightened by causes other than the engine. Judgment was rendered for appellee, from which this appeal is taken.

The evidence shows that appellee was driving a team hitched to a wagon along one of the main thoroughfares in the city of Greenville. Appellant's engine was standing on the railroad track, and when appellee got near where said engine was standing "it popped off, the steam escaped," and caused appellee's team to run away and injure him. The steam was supplied with a gauge from which the amount of steam pressure in the boiler could be ascertained. It was also supplied with an escape valve which relieves the pressure of the steam on the boiler before it reaches the danger point. One of the witnesses, whose testimony on this point was uncontradicted, stated that "there is no steam that escapes from an engine but what the engineer by looking at the gauge

can tell it before it commences escaping, and the safety valve is where it escapes from the boiler, and the guage indicates the amount of steam in the boiler. As before stated, it begins to simmer at 135. As to how long before it will explode after that depends on what kind of fire is in the boiler. With an ordinary fire it will not be very long—probably ten or fifteen minutes. During this time the escape could be prevented." From this we conclude that by the proper care an engineer could prevent the escape of steam from his engine.

Appellant assigns error as follows: "The court erred in refusing to give the jury defendant's special instruction number 1, because the entire proof in the case showed no liability so far as defendant was concerned, for the reason that there was no proof tending to show that the employes of defendant either intentionally caused the steam to escape or that they permitted it to escape in such quantities or volume, knowing or having reason to believe that thereby the team of plaintiff would become frightened and run away and injure him."

The court charged the jury on this phase of the case, which is complained of by appellant, as follows: "If you believe from the evidence that the plaintiff desired to cross the track of the defendant company at Washington Street crossing with his wagon and team, and that said crossing was a public street in the city of Greenville, and that when he was traveling along a public street, was approaching the crossing for that purpose, there was an engine of defendant company on the track near the crossing; and if you further believe that the employes of the company in charge of said engine, knowing that by doing so teams passing the crossing might become frightened thereat, unnecessarily or negligently caused or permitted the popping off of steam by or from said engine, and that the team that plaintiff was driving was thereby frightened and ran away in consequence, and that plaintiff to avoid threatened or apparent injury jumped from the wagon and was injured; and if you further believe that plaintiff's act in jumping from his wagon, under the circumstances, was the act of a person of ordinary prudence, and that a person of ordinary prudence who was acquainted with the disposition and qualities of plaintiff's team would have driven the team at the place and in the manner plaintiff drove them, and that plaintiff was not guilty of negligence that caused or contributed to the injuries; and if you further believe that said acts of the employes of the defendant company in causing or permitting the popping off of steam as aforesaid by or from said engine, was negligence, as that term is hereinbefore defined, and that but for the same the injury would not have been sustained by plaintiff, then you should find for plaintiff."

There was no proof that the employes of defendant intentionally caused the steam to escape, but there was testimony tending to show that the noise made by the escape of the steam was greater than usual, and did frighten appellee's team and cause them to run away.

The issue of negligence on the part of appellant is duly raised by the foregoing assignment. The effect of appellant's contention is, that to

make it liable the employes must have caused the steam to escape, know-ing or having reason to believe the. team would become frightened and run away; and that the evidence is wholly insufficient to authorize a recovery by appellee. In support of this contention the case of Hargis v. Railway, 75 Texas, 19, is cited as directly in point. The principles there announced we think are correct, but we are of the opinion that the facts are not exactly the same as presented in this case. In that case the party had driven across the track and stopped his team, when the engineer blew the whistle to signal the train crew that he was going to back the train. The court presumed that the whistle is necessarily used as a signal in operating trains, and in discussing the care to be exercised at crossings, uses the following language: "It would seem to follow that persons in control of teams easily frightened and unaccustomed to such noises, should exercise care in approaching trains, and should not un-necessarily stop in close proximity to them. The companies have a right to expect that this care will be exercised, and are not required to take steps to provide against the consequence of a failure to do so. However, we do not say that if the employes of a railroad company become aware that an unmanageable team is halted near the track it is not their duty to desist for a reasonable time from making such noises as may be. avoided consistently with their other duties." Also: "It is not to be seriously contended that a person by voluntarily stopping an unsafe team near a train could make it the duty of the employes of a railroad company to await his pleasure in driving on before resorting to the usual signals for starting the train. They would have the right to conclude that he knew his own business best, and that he had his team under his control."

The jury found against the plaintiff in the above mentioned case, and the court seems to base its opinion on the want of proof of negligence on the part of appellee, and that there was contributory negligence on the part of Hargis. The court in reaching a conclusion in that case was governed by the facts presented, and under the evidence it was fully warranted in holding as it did. But we apprehend the court did not in-tend to hold that under all circumstances, in order to constitute negli-gence, the employe must be present and see the team and judge from its action whether or not it is safe to blow the whistle, allow steam to es-cape, etc.

While in the case before us, the evidence fails to show that an employe saw appellee or knew of his danger, yet it does show that the engine was allowed to stand near a public thoroughfare, that steam was allowed to escape, which was calculated to frighten horses not accustomed to same, and which escaping of the steam could have been prevented by the exercise of ordinary care. It was shown that the train men were in-structed not to let engines pop any more than could be avoided around depots, public crossings, and public highways.. There was no evidence tending to show that the escape of steam at the time shown was necessary in the operation of the train, or that it could not have been avoided; but the contrary was shown. The situation was sufficient to cause a reason-

ably prudent person to believe that the escape of steam would frighten the horse of any one traveling along the thoroughfare and thereby cause injury. We think the evidence was sufficient to warrant the charges of the court complained of, and the refusing of the special charge asked by appellant; and sufficient to support the judgment rendered.

There are several other assignments complaining of the charge of the court and the refusal to give special charges; but none are well taken and not necessary to be discussed, as the foregoing discussion covers the pivotal point in the case. Judgment affirmed.

*Affirmed.*

Writal of error refused.

Writ of error refused.